UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DEBORAH D. BALLARD,               )
    Plaintiff,                )
                               )
    v.                         )    CAUSE NO.: 2:12-CV-315-PRC
                               )
UNITED STATES STEEL CORPORATION,  )
WILLIAM DITTRICH, and MATT ELDRIDGE, )
    Defendants.                )

**OPINION AND ORDER**

This matter is before the Court on a Motion of Defendants, United States Steel Corporation, William Dittrich, and Matt Eldridge for Summary Judgment [DE 74], filed on April 20, 2015. Because Plaintiff Deborah Ballard cannot demonstrate that she qualified for FMLA leave in May 2011 and because she cannot show that her employment was terminated in May 2011 for any reason other than her violation of the Last Chance Agreement, the Court grants the motion.

**PROCEDURAL BACKGROUND**

On August 7, 2012, Plaintiff, Deborah D. Ballard filed, *pro se*, an employment discrimination complaint against United States Steel Corporation ("U.S. Steel") and several of its employees–William Dittrich, Matt Eldridge, and Greg Tokwitz. The Complaint alleged that Defendants violated her equal rights under 42 U.S.C. § 1981. Ballard then retained counsel who filed an Amended Verified Complaint on October 10, 2012, against U.S. Steel, Dittrich, Eldridge, and Richard Baetz. The Amended Complaint dropped Greg Tokwitz as a defendant and brought claims only under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

On April 1, 2013, Ballard filed a Motion for Leave to File Second Amended Complaint against all Defendants, attaching a copy of the proposed Second Amended Complaint. Each of the four Defendants filed an Answer to the Second Amended Complaint on April 18, 2013, in which

they denied any violation of the FMLA occurred. On April 23, 2013, the Court granted Ballard's motion and ordered her to file the Second Amended Complaint upon receipt of the Order. Ballard did not do so. However, on August 17, 2015, the Court directed the Clerk of Court to docket the Second Amended Complaint as of April 23, 2013.

On October 1, 2013, the parties filed a stipulation of dismissal, dismissing with prejudice only Defendant Baetz.

On April 21, 2014, Ballard's counsel filed a Motion for Leave to Withdraw Appearance, and the following day the motion was granted. Ballard has since been proceeding *pro se*.

On April 20, 2015, Defendants filed the instant Motion for Summary Judgment, a memorandum in support, designated evidence, and a Notice to Pro Se Party of Summary Judgment Motion, all of which were served on Ballard. Ballard did not file a response, and the time to do so has passed.

On February 25, 2015, the parties agreed orally to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

Ballard began working at U.S. Steel on December 2, 1996. She was a bargaining unit employee represented by United Steelworker's Union. The Union has a collective bargaining agreement with U.S. Steel called a Basic Labor Agreement ("BLA"). Article 5, Section J of the BLA provides that U.S. Steel "retains the exclusive rights to manage the business and Plants and to direct the working forces." (Def. Ex. 11, p.11 (Bates USS000096)). These rights include the right to hire, suspend, or discharge for proper cause.

In April 2011, Ballard was working as a craneman at the Number 2 Caster. As a craneman, Ballard worked as part of a five-person crew that consisted of two crane operators and three shippers. Ballard was classified as a Labor Grade 2 Utility Technician. The job description for a Grade 2 Utility Technician required the individual, among other things, to inspect and perform maintenance on all associated equipment. Part of the job duties for this position included housekeeping and maintenance, which included sweeping.

From April 18, 2010, through April 16, 2011, Ballard worked a total of 836.5 hours.

The BLA contains the following provision regarding the FMLA:

> The Company shall comply with the Family Medical Leave Act of 1993 (FMLA) and further agrees to the following regarding Employee eligibility and entitlement. Nothing in this Section shall be construed to provide lesser treatment than that required under the FMLA or to deprive any Employee of any right or forum thereunder.
> . . .
>     2. Eligibility and Entitlement
>         a. Leave under this Section shall be available to any Employee who has twelve (12) months or more of continuous Service calculated pursuant to the Seniority provisions of this Agreement. There shall be no hours-worked requirement for eligibility.

(Def. Br., Ex. 11, p. 12-13 (Bates USS000155-56)).

In 2009 and 2010, Ballard sought and obtained intermittent leave to take care of her mother. There was never a time when Ballard was denied FMLA leave to take care of her mother. Ballard did not ask for leave under the BLA as a result of any of her own claimed medical conditions or medical issues.

An employee who calls off work must do so two hours prior to her scheduled shift and must indicate why she is calling off. This also applies to individuals calling off in connection with leave under the BLA; the employee must indicate that she is taking time off in accordance with the leave policy. Ballard used the absentee procedure numerous times throughout her employment at U.S. Steel.

During the time Ballard was taking intermittent leave under the BLA, when Ballard called off work for intermittent leave or any other reason, another employee would have to work a double shift, up to 16 hours, or other employees would have to be called in to cover her shift. As a result of complaints and the disruption caused by the absences, Defendants switched Ballard to the day shift and assigned her housekeeping duties, including sweeping, which were a part of her job duties as a Labor Grade 2 Utility Technician. This change in duties occurred approximately in May or June 2010, and lasted for approximately five months. By assigning Ballard to a non-operating task, her absences would not adversely affect Defendants' operations or other employees. Defendants were able to schedule other employees' overtime, and the employees did not have to worry about getting held over for an extra shift unexpectedly. During the time that she was on the day shift performing maintenance and housekeeping, Ballard did not receive any decrease in salary and she maintained her position as a Labor Grade 2 Utility Technician.

On February 9, 2011, when Ballard was visiting the Plant medical office for an evaluation, Dr. Tokowitz, the Plant Medical Director for U.S. Steel, smelled alcohol on her breath. Subsequent medical testing confirmed the presence of alcohol and a search of her vehicle revealed the presence of alcoholic beverages. U.S. Steel's policy prohibits alcohol from being brought onto the property and does not permit anyone onto its property who is under the influence of alcohol. Ballard was aware of the policy. That same date, Ballard was issued a suspension for her alcohol related offenses, and Ballard ultimately agreed to a Last Chance Agreement ("LCA") that would be in effect for three years.

The LCA contained specific instructions as to how Ballard was to call off from work and what documentation she was to provide. All future absences or late arrivals needed to be reported at least two hours prior to the time she was scheduled to work. When such instances arose, management would make a determination on a case-by-case basis whether the absence was justified. If an illness or injury occurred, Ballard agreed as part of her LCA to provide a note from a qualified physician listing the dates of treatment and a statement indicating that she was totally disabled and could not work on the date(s) absent. Failure to comply with these provisions would result in a five-day suspension subject to discharge. By her signature on the LCA, Ballard acknowledged that she had read and understood the LCA and voluntarily signed the LCA with knowledge of the nature and consequence of it.

Ballard called off work for multiple days in April 2011. Specifically, on April 15, 2011, at 6:22 p.m., Ballard called off work for her April 16, 2011, 11:00 p.m. to 7:00 a.m. shift.[1] On April 16, 2011, at 10:09 a.m., Ballard called off work for her April 17 and 18, 2011, 11:00 PM to 7:00 AM

---

[1] The 11:00 p.m. to 7:00 a.m. shift begins on the preceding day. For example, the April 18, 2011, 11:00 p.m. to 7:00 a.m. shift began at 11:00 p.m. on April 17 and ended at 7:00 a.m. on April 18.

shifts. At that time, she reported to her supervisor that she had a sinus infection and that her physician would not be in until Monday. Ballard was scheduled to work the 3:00 p.m. to 11:00 p.m. shift on April 18, 2011; she failed to call off work for this shift. At 4:28 p.m. on April 18, 2011, Ballard called off work for her 11:00 p.m. to 7:00 a.m. April 19, 2011 shift.

Ballard provided documentation from a physician regarding her absences on April 16 through April 18, 2011. However, Defendants concluded that the documentation provided was inconsistent and not credible. Defendants also determined that none of the documentation established that Ballard was totally disabled and could not work.

As a result of her absences on April 16, 17, and 18, 2011, Ballard was suspended for violating her LCA, and, ultimately, her employment was terminated. Ballard's union filed three grievances associated with her April 2011 discipline and discharge. On April 27, 2011, after a fact-finding hearing, Ballard's suspensions were converted to discharge effective May 2, 2011. Ballard's grievances proceeded through multiple steps, and at each step her discipline and discharge were upheld. The Union withdrew its grievances before the grievance process was completed.

The decision of whether an employee violates the terms of an LCA is made by the Labor Relations Department. That department also holds the final authority to discharge an employee. In an Affidavit filed in support of the instant motion, the Labor Department's Manager, Laura Kocel, stated that the fact that Ballard had obtained intermittent leave under the BLA in the preceding years to take care of her mother did not play any role in the decision to discipline her as a result of her April 2011 absences. Kocel also states that she was unaware of any other employees who, at the time of Ballard's termination, had failed to follow the protocol for reporting off and who were not found to be in violation of their LCAs. This included Michael J. Lopez who Ballard identified as a

8

comparator. Lopez, who was placed on an LCA after receiving discipline for absenteeism, was not later terminated for violating his LCA because he had received his supervisor's permission to take an emergency vacation and, therefore, his subsequent absences were justified.

## ANALYSIS

Ballard's Second Amended Complaint includes two counts. In Count I, Ballard alleges she was unlawfully discharged in April 2011 by Defendants in violation of the FMLA. In Count II, Ballard alleges that she was punished for taking FMLA to care for her mother in 2010 when she was removed from her position as a craneman and given housekeeping duties on the day shift and that she was later retaliated against for filing a grievance about the change in duties when she was made to enter into the Last Chance Agreement and her employment was eventually terminated. The Court considers each count in turn.

### A. Interference

In her Second Amended Complaint, Ballard alleges that she was employed by U.S. Steel for a time period in excess of twelve months before April 16, 2011, that she worked over 1,250 hours during those twelve months, and, therefore, that she was an eligible employee under FMLA. Ballard alleges that, during this time, she was receiving treatment for various medical conditions and that on April 18, 2011, she gave notice of her need for FMLA leave when she asked Eldridge to place her on "will call" status. However, Defendants offer evidence that Ballard was not an eligible employee under the FMLA because she worked less than 1,250 hours in the year preceding April 16, 2011. Defendants also offer evidence that her absences on April 16, 17, and 18, 2011, were not excused and, thus, were a violation of her Last Chance Agreement ("LCA").

9

The Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") guarantees eligible employees twelve weeks of leave to take care of a child, spouse, or parent with a serious health condition or "because of a serious health condition that makes the employee unable to perform the functions of the employee's position." 29 U.S.C. § 2612(a)(1). An employer is prohibited from interfering with the exercise of or the attempt to exercise any right under the FMLA. *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citing *James v. Hyatt Regency Chi.,* 707 F.3d 775, 780 (7th Cir. 2013) (citing 29 U.S.C. § 2615(a)(1))). It is also unlawful for an employer to retaliate against an employee who exercises or attempts to exercise FMLA rights. *Id*. (citing 29 U.S.C. § 2516(a)(2)).

To prevail on an FMLA interference claim, Ballard must "demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled." *Brown v. Auto. Components Holding, LLC*, 622 F.3d 685, 689 (7th Cir. 2010) (citing *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009)).

An "eligible employee" is defined by the statute as "an employee who has been employed . . . for at least twelve months by the employer" and who has "at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). "This is a bright line requirement with no 'close enough' exception." *Weidener v. Unity Health Plans Ins. Co.*, 606 F. Supp. 2d 949, 958 (W.D. Wis. 2009) (citing *Pirant v. United States Postal Serv.*, 542 F.3d 202, 206 (7th Cir. 2008)). When calculating the number of hours that an employee has worked to determine eligibility under the FMLA, courts look to the legal standards of the Fair Labor Standards Act. *See* 29 U.S.C. § 2611(2)(C) (citing 29 U.S.C. § 207).

Thus, in order for Ballard to establish her claim for interference under the FMLA related to her termination, she must prove that she was an "eligible employee" by showing that she worked 1,250 hours from April 18, 2010, through April 16, 2011. Ballard cannot make this showing because her pay stubs indicate that she only worked a total of 836.5 hours. Ballard does not dispute the accuracy of the pay stubs nor does she argue that she worked hours that are unaccounted for. In *Pirant*, the court refused to extend FMLA coverage to an employee who fell short of the 1,250 hour requirement by .2 and 1.2 hours, reasoning that "the statutory text is perfectly clear . . . . The right of family leave is conferred *only* on employees who have worked at least 1,250 hours in the previous 12 months." 542 F.3d at 206 (emphasis in original) (quoting *Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 582 (7th Cir. 2000)). Here, Ballard is more than 400 hours short of the requirement, is not an "eligible employee" as defined by the FMLA, and cannot maintain her interference claim based on her termination in April 2011. Accordingly, Defendants' request for summary judgment on Ballard's interference claim in Count I is granted.

Defendants also argue that Ballard was not "entitled" to FMLA leave because she cannot demonstrate that she suffered from a "serious health condition" that prevented her from fulfilling the functions of her job. *See* 29 U.S.C. § 2612(a)(1)(E). The FMLA defines an employee with a "serious health condition" as one who has "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). An employee "must demonstrate by a preponderance of evidence that he is entitled to the disputed leave." *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 499 (7th Cir. 1999). Because Ballard was not eligible for

FMLA leave, the Court need not determine whether Ballard was entitled to FMLA leave because of a serious health condition.

**B. Retaliation**

In Count II, Ballard alleges that, when she took intermittent FMLA leave to care for her mother in 2010, Defendants removed Ballard from her duties as a craneman and ordered her to sweep the floors as a punishment for taking FMLA leave, that Ballard filed a grievance with U.S. Steel's Civil Rights Committee complaining about the harassment, that a hearing was held, that shortly thereafter Ballard was placed back on the crane, and that Baetz continued to harass Ballard, telling her to put her mother in a nursing home. Ballard further alleges that, in February 2011, Ballard was suspended from her employment for five days and offered a Last Chance Agreement ("LCA") and that in May 2011, Ballard was terminated for violating the LCA. Thus, it appears that Ballard is alleging that her termination in May 2011 was in retaliation for complaining about the change in her job duties in 2010.

The FMLA makes it unlawful to "discharge or in any other matter discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2); *see also* 29 C.F.R. § 825.220(a). In addition, an employer is prohibited from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). "In other words, the employer cannot use an employee's use of FMLA leave as a negative factor in promotion, termination, and other employment decisions." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 781 (7th Cir. 2013). An FMLA retaliation claim can proceed under either the direct or indirect method of proof. *Id*. Under both methods, the plaintiff must present evidence that a materially adverse action was taken by her

employer. *Id*. (citing *Daugherty v. Wabash Center Inc.*, 577 F.3d 747, 751 (7th Cir. 2009); *Simpson v. Office of Chief Judge of Circuit Ct. of Will Cnty.*, 559 F.3d 706, 718 (7th Cir. 2009)).

First, to the extent Ballard is alleging that her reassignment to housekeeping duties during the intermittent leave to care for her mother in 2010 is an adverse employment action, her claim fails. Under 29 U.S.C. § 2612(b)(2), an employer may require an employee needing intermittent leave "to transfer temporarily to an available alternative position offered by the employer for which the employee is qualified." Such transfers are permissible when that position "has equivalent pay and benefits" and "better accommodates recurring periods of leave than the regular employment position of the employee." *Id.* Moreover, the alternative position "does not need to have equivalent duties," so long as the pay and benefits are equivalent. 29 C.F.R. § 825.204(c); *see also James*, 707 F.3d at 782 (describing an adverse employment action that is "materially adverse" as "more disruptive than mere inconvenience or an alteration of job responsibilities" (quotation marks and citation omitted)).

Defendants have offered evidence that Ballard's intermittent leave to care for her mother caused problems when she worked rotating night shifts because other employees were required to work unplanned longer hours or a double shift due to her absences. The evidence shows that her frequent call-offs were causing morale problems with her coworkers who could not rely on her scheduled attendance. Ballard was switched to the day shift and was assigned housekeeping duties, including sweeping, which had always been a part of her job duties as a Labor Grade 2 Utility Technician. By assigning Ballard to non-operating tasks, such as housekeeping, her absences did not adversely affect operations or other employees. Ballard was paid the same amount that she was earning as a craneman. Throughout Ballard's time in the alternative position, her salary and position

13

remained the same. The change in duties lasted approximately five months. Ballard acknowledged that she was never denied FMLA leave to care for her mother. Therefore, the change in her duties during her intermittent leave in 2010 does not constitute retaliation.

Second, to the extent Ballard is alleging in Count II that she was required to sign the LCA and was ultimately terminated under the LCA in retaliation for filing a grievance about her reassignment of job duties in 2010, Ballard cannot survive summary judgment under either the direct or indirect method because she has offered no evidence of a causal connection between her grievance and/or prior intermittent leave and the decision to terminate her in May 2011 for violating the LCA.

To establish a prima facie case for retaliatory discharge under the direct method, Ballard must establish that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (citing *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009)). Under the direct method, "proof of discrimination is not limited to near-admissions by the employer that his decisions were based on a prescribed criterion, but rather, includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009) (internal quotes omitted) (quoting *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006)).

Defendants have offered evidence that Ballard accepted the LCA in January 2011 after she presented to the Plant medical office for an evaluation and tested positive for alcohol and alcoholic beverages were discovered in her vehicle, both of which were against U.S. Steel policy. Ballard offers no evidence to dispute the reason she entered into the LCA. Subsequently, Ballard was fired

14

in May 2011 for violating the LCA in April 2011, as set forth above. Ballard offers no evidence to create any inference that her termination in May 2011 was for any reason other than her violation of the LCA.

Under the indirect method, Ballard may create a presumption of discrimination by establishing a prima facie case of discrimination. *Cracco*, 559 F.3d at 634-35. To do so, Ballard must demonstrate that (1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* (citing *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849-50 (7th Cir. 2008)). This presumption shifts the burden to Defendants to produce a legitimate, non-discriminatory reason for their actions. *Id.* at 635 (citing *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008)). If Defendants satisfy their burden of production, the burden then shifts back to Ballard to show that Defendants' reason is false and only a pretext for discrimination. *Id.*

As for the first prong, Ballard alleges that she was retaliated against for filing the grievance regarding her change in job duties in 2010. However, because the change in job duties in 2010 was not a violation of the FMLA, Ballard's grievance was not in opposition to "any practice made unlawful by this subchapter." *See* 29 U.S.C. § 2615(a)(2). Nevertheless, for purposes of this analysis, the Court will assume, without finding, that Ballard could show that she "reasonably believed" that the change in job duties was a violation of the FMLA such that she could establish the first prong of the prima facia test. *See Tate v. Executive Mgmt. Servs.*, 546 F.3d 528, 532 (7th Cir. 2008) (explaining that, in order to engage in protected conduct, the plaintiff only has to show that she "reasonably believed in good faith the practice [she] opposed violated [the statute]" (citing

*Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002))). For purposes of this motion, the Court will assume, without finding, that Ballard was satisfactorily performing her job duties. Under the third prong, Ballard's termination was an adverse employment action.

However, under the fourth prong, Ballard has not demonstrated that a similarly situated employee was treated more favorably. Defendants note that Ballard has identified Lopez as a comparator. However, Lopez was granted leave by his supervisor to take emergency vacation under the terms of his LCA; in contrast, Ballard did not request her leave before her scheduled shift nor did she call off or timely call off for her April 8, 2011 3:00 p.m. to 11:00 p.m. shift. Finally, unlike Lopez, Ballard failed to provide proper documentation for her April 16-18, 2011 absences. Therefore, Ballard cannot make out a prima facie case of retaliation for her termination in May 2011.

Even if Ballard could establish a prima facie case, Defendants offer a legitimate, non-discriminatory reason for her termination. As discussed under the direct method, Defendants offer evidence of the basis for the LCA in January 2011 and the basis for Ballard's termination under the LCA in May 2011. Ballard offers no evidence to question the motivation behind these actions and has identified no evidence that the reason was a pretext for discrimination. As a result, Ballard's claim fails under the indirect method as well.

Accordingly, Defendants' request for summary judgment on Ballard's retaliation claim in Count II is granted.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [DE 74], granting summary judgment in favor of Defendants on all of Plaintiff's claims in the Second Amended Complaint.

The Court **VACATES** the final pretrial conference and trial.

The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff.

So ORDERED this 17th day of August, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT